UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TAMELA MURRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 22-cv- |
| | ) | |
| v. | ) | |
| | ) | |
| RECEIVABLES PERFORMANCE | ) | |
| MANAGEMENT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | <u>Jury Demanded</u> |

**COMPLAINT**

Plaintiff, Tamela Murray, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), for a finding that Defendant's debt collection actions violated the FDCPA, and to recover damages for Defendant's violations of the FDCPA, and alleges:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2. Venue is proper in this District because parts of the acts and transactions occurred here, and Defendant transacts substantial business here.

**STANDING**

3. Plaintiff has suffered an injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

4. Specifically, Plaintiff suffered a concrete injury and harm to her reputation as a result of Defendant sharing of false information regarding a debt with a third party. *Evans v. Portfolio Recovery Associates,* 889 F.3d 337, 344 (7th Cir. 2018).

5. Plaintiff has thus suffered an injury as a result of Defendant's conduct, and suffered harm to her reputation, giving rise to standing before this Court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); *Bellwood v. Dwivedi*, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

**PARTIES**

6. Plaintiff, Tamela Murray ("Plaintiff"), is a resident of the State of Illinois, from whom Defendant attempted to collect a delinquent debt owed for a defaulted T-Mobile USA consumer mobile account. Plaintiff is thus a "consumer" as that term is defined in 15 U.S.C. §1692a(3) of the FDCPA.

7. Defendant, Receivables Performance Management, LLC ("RPM"), is a Washington limited liability company that does or transacts business in Illinois. Its registered agent is CT Corporation System, located at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

8. RPM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. RPM holds a collection agency license from the State of Illinois.

10. RPM regularly collects or attempts to collect defaulted consumer debts, on behalf of others, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

## FACTUAL ALLEGATIONS

11. Plaintiff incurred a debt for goods and services purchased and used for personal, family, or household purposes, originally for a T-Mobile consumer account ("Account").

12. Plaintiff did not pay the Account and it went into default.

13. RPM subsequently began efforts to collect the debt.

14. In response to collection attempts by Defendant, Plaintiff consulted with the attorneys at Community Lawyers, LLC. who, on March 11, 2022, sent a letter to Defendant indicating that Plaintiff disputed the debt. (Exhibit A, Dispute Letter).

15. RPM received Plaintiff's dispute on March 17, 2022.

16. Plaintiff's letter stated, in part, that the amount reported is not accurate.

17. A statement that "the amount reported is not accurate" evinces the intention to dispute the validity of at least a portion of the purported debt. *Evans*, 889 F.3d at 377. "There is simply no other way to interpret this language." *Id.*

18. Thereafter, on April 2, 2022, Defendant communicated credit information regarding the debt to the Experian consumer reporting agency, including the balance, an account numbers and the date reported. (Exhibit B, Redacted Excerpt from Plaintiff's Experian Report).

19. Defendant failed to communicate that Plaintiff's debt was disputed when it communicated other information to Experian regarding the debt.

20. 15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

21. RPM failed to communicate a dispute to the Experian credit reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about the dispute and communicated other information regarding the debt to the credit reporting agency.

22. Credit reporting by a debt collector constitutes an attempt to collect a debt. *E.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

23. RPM materially lowered Plaintiff's credit score by failing to note Plaintiff's dispute.

24. A debt reported with no dispute results in a much lower credit score than a report of both the debt and the dispute. *Saunders v. Branch Banking and Trust Co. of VA*, 526 F. 3d 142, 146-47 (4th Cir. 2008).

25. Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. *See*, *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I- FAIR DEBT COLLECTION PRACTICES ACT

26. Plaintiff re-alleges the paragraphs above as if set forth fully in this count.

27. RPM failed to communicate a dispute to the Experian credit reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about the dispute and communicated other information regarding the debt to Experian.

WHEREFORE, Plaintiff respectfully asks this Court enter judgment in Plaintiff's favor and against Defendant as follows:

      1.a.A.a.A.    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

      1.a.A.a.B.    Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

      1.a.A.a.C.    Such other or further relief as the Court deems proper.

## JURY DEMAND

      By:    s/ Paúl Camarena
                 One of Plaintiff's Attorneys

Paúl Camarena, C.P.A., Esq.
500 So. Clinton St., No. 132
Chicago, IL 60607
(312) 493-7494
paulcamarena@paulcamarena.com

Michael Wood
Celetha Chatman
**Community Lawyers LLC**
980 N Michigan Ave, Suite 1400
Chicago, IL 60611
Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com

# EXHIBIT A

Community Lawyers LLC
980 N. Michigan Ave., Suite 1400
Chicago, IL 60611



**USPS CERTIFIED MAIL**

9214 8901 4298 0467 0818 96

March 11, 2022

Receivables Performance
20816 44th Ave, W
Lynnwood, WA 98036



RE:    Tamela Murray
309 S Central Ave
CHICAGO, IL 60644
ACCOUNT: 66403064 (T-Mobile USA)
CURRENT AMOUNT OF DEBT: $746.00
LAST 4 OF SOCIAL: 0800



Hi, please consider temporarily suspending collection and reporting of this debt. My client is currently affected by the Covid-19 natural disaster and negative credit reporting makes it more difficult to seek short-term loans and other assistance, which already tend to be very expensive.

For guidance on collection of debts in our state, please see the IDFPR Covid-19 Best Practices guidance, pasted in full below and also linked directly.

Specifically, please note the timing of these guidelines, which continue for several months after the term of the Disaster Proclamation, the use of the AW code (should you decide to continue reporting during this time) and the waiver of any finance charges should you decide to defer payments. Note that the Disaster Proclamation continues to be renewed every thirty days to date.

An amenable option for both of us would be to simply delete the tradeline as my client believes the amount you are reporting to be inaccurate. Please continue to make sure to direct all contact regarding this account to my office.

**********************

Consumer Credit Licensees – COVID-19 Best Practices

JB Pritzker, Governor of Illinois, declared all counties in the State of Illinois as a disaster area on March 9, 2020 in response to the outbreak of Coronavirus Disease 2019 ("COVID-19") and subsequently every 30 days to date ("Gubernatorial Disaster Proclamations"). As it develops, the COVID-19 pandemic will continue to present many yet to be determined challenges for consumer credit licensees and their customers, Illinois consumers.

During this crisis, the Department of Financial and Professional Regulation (Department) reminds all consumer credit licensees that they are required to comply with any Executive Order issued by the Governor of Illinois or other federal, state, or local mandate regarding the origination, servicing, or collection of consumer debt including, but not limited to Executive Order 2020-16, which suspends the provisions of the Uniform Commercial Code, 810 ILCS 5/9-609, regarding the possession or usability of a vehicle, and the provisions of the Illinois Vehicle Code, 625 ILCS 5/3-114, regarding the repossession of vehicles, through at least April 30, 2020.

In addition to complying with these mandates, the Department expects Illinois consumer credit licensees to work proactively with consumers during this crisis, and to be flexible with repayment of debt.
During the Gubernatorial Disaster Proclamation and for the next several months after the term of the final Gubernatorial Disaster Proclamation, the Department recommends licensees follow the best practices described below to assist consumers impacted by the crisis:

- Increase communication with consumers and provide multiple, easily accessible methods for consumers to contact the business, especially if the business has altered operations due to COVID-19.
- Proactively reach out to consumers to offer payment options, including deferred or partial payments, which would avoid delinquencies and negative credit reporting.
- Waive all late charges and finance charges that might result from a payment deferment or partial payments.
- Waive non-sufficient funds fees for dishonored payments or unsuccessful ACH withdrawals.
- Consider suspension of debt collection efforts for consumers negatively impacted by COVID-19.
- Proactively reach out to customers on automatic payment plans and, upon request of the consumer, temporarily suspend theseautomatic repayment plans and place the consumer in forbearance without fees or interest.
- Proactively reach out to customers who have granted wage assignments and, upon the request of the consumer, revoke any wage assignment action and place the consumer in forbearance without fees or interest.
- Ensure sufficient staffing of customer service phone lines and alternative methods of providing customer service support.
- Give borrowers the option to voluntarily surrender collateral with no deficiency.
- To the extent legally permissible, use the already available natural disaster code and report the account as current or deferred.

The above are recommendations on best practices from the Department that will serve the best interests of consumers and licensees.

These recommendations do not alter any applicable law, and nothing in this document shall be interpreted as conflicting with or superseding any federal, state, or local mandate.

Licensees are further advised that the Department will carefully examine lending and collection activity during the COVID-19 crisis. Licensees found engaging in unlawful conduct that harms consumers during this crisis will be subject to prompt and significant discipline by the

Department. Discipline may include the imposition of fines and, if appropriate, license suspension, or revocation.

Written and Signed By:

_____
David Berland
Deputy General Counsel, Chief Counsel of the Division of Financial Institutions
Approved by:
Francisco Menchaca
Director, Division of Financial Institutions
Dated: April 14, 2020

*******************

https://www.idfpr.com/Forms/COVID19/2020%2004%2014%20DFI%20Best%20Practices.pdf


Thank you,

Michael J. Wood, Attorney at Law
Community Lawyers LLC
980 N. Michigan Ave., Suite 1400
Chicago, IL 60611
Fax: (312)265-3227
Email: admin1@communitylawyersgroup.com

# EXHIBIT B

[redacted]

| Name |
| --- |
| TAMELA MURRAY |

[redacted]

| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| RECEIVABLES PERFORMANCE | 66403064 | $746 as of 04/02/2022 | 11/2021 | **Collection account. $746 past due as of Apr 2022.** |

20816 44TH AVE W
LYNNWOOD, WA 98036
866 269 9306

**Address identification number**
0125938258

**Original creditor**
T-MOBILE USA

**Type**
Collection

**Terms**
1 Months

**On record until**
Oct 2026

**Credit limit or original amount**
$746

**High balance**
$0

**Monthly payment**
$0

**Recent payment amount**
$0

**Date of status**
11/2021

**First reported**
01/2022

**Responsibility**
Individual

### Account history

2022
Apr  Mar  Feb  Jan
C    C    C    C

Collection as of Jan 2022 to Apr 2022

**Balance history**

The following data will appear in the following format:
Date: account balance / date payment received / scheduled payment amount / actual amount paid
Mar 2022: $746 / No data / No data / No data
Feb 2022: $746 / No data / No data / No data
Jan 2022: $746 / No data / No data / No data
The original amount of this account was $746